**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES A. PROVITT,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-5903** |
| | : | |
| **SGT TERRA, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**YOUNGE, J.** **JULY 28, 2026**

*Pro se* Plaintiff James A. Provitt commenced this civil action by filing a Complaint (ECF No. 2), raising claims pursuant to 42 U.S.C. § 1983 and naming numerous individuals employed by the Pennsylvania Department of Corrections ("DOC Defendants") and its medical provider Wellpath ("Wellpath Defendants") at SCI Phoenix, where Provitt was formerly incarcerated. Currently before the Court is a Motion to Dismiss the Complaint in part for lack of jurisdiction filed by the DOC Defendants (ECF No. 35), and a Motion to Dismiss the Complaint for failure to state a claim filed by the Wellpath Defendants (ECF No. 26). Provitt has filed responses to both Motions. (ECF Nos. 37, 39.) For the following reasons, the Court will grant the DOC Defendants' Motion, and grant in part and deny in part the Wellpath Defendants' Motion.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Provitt states that on July 28, 2024, while he was recovering from hernia surgery, he was attacked in his cell by Sergeant McCusker and other unknown corrections officers. (*See* Compl.

[1] The facts set forth in this Memorandum are taken from Provitt's Complaint (ECF No. 2). The Court adopts the pagination assigned to all filings by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary. The Court employs names, identities, and spellings as clarified by Defendants' filings.

at 15.) He was taken to the medical department, and the next day he had a misconduct hearing at which he was found guilty of assault on staff and sentenced to sixty days in the restricted housing unit ("RHU"). (*See id.* at 15-16.) At some point in the next two days, he met with an unnamed mental health staff member about "many mental health issues," including "anxiety around being double celled . . . in the RHU while still recovering from hernia surgery." (*Id.* at 16.) He asserts that he was told to ask for mental health staff again if he "was having anxiety and felt like it would be a problem." (*Id.*)

On August 1, 2024, Provitt asked Lt. Potoski[2] if he could speak to a psychologist about his anxiety because he felt he was having a mental health crisis. (*See id.*) Potoski told Provitt that he would "see if the unit psych was still on duty." (*Id.* at 17.) Provitt was later transported between cellblocks in the RHU, "reprocessed," then told he would be housed alone. (*Id.*) Provitt alleges that instead of being placed in a cell alone, he was escorted to a cell that had no lights and another inmate who was wearing a "makeshift hood" and was not handcuffed. (*Id.* at 17-18.) Provitt alleges that, when he refused to go into the cell, he was attacked by numerous named and unnamed corrections officers. (*See generally id.* at 18-19.) He asserts that this attack was planned by Lt. Potoski and the other COs when they learned that Provitt had been sent to the RHU for assaulting a staff member. (*See id.* at 20-21.)

Provitt states that after the assault he was "dragged" to the medical department and placed in an observation cell, then eventually taken to Einstein Jefferson Hospital in Montgomery County. (*Id.* at 19-20.) Due to the extent of his injuries, he was transferred to Einstein Jefferson

---

[2] In his Complaint, Provitt refers to both "Lt. Pitoski" and "CO Pitoski," but the Court understands through subsequent motions practice and submissions from Counsel for the DOC Defendants that these individuals are "Lt. Potoski" and "CO Gajewski," respectively. (*See generally* ECF Nos. 17, 18, 24, 25, 31.)

Philadelphia, where he was treated for fractured nasal and orbital bones resulting from blunt force trauma. (*Id.* at 20.) Provitt asserts that the ophthalmologist at Einstein Jefferson Philadelphia placed a "notation in [Provitt's] file for [him] to receive eye drops and for [him] to return the following week for a checkup." (*Id.* at 22.)

Provitt alleges that he spoke with Defendant Dr. Letizio on August 12, 2024, "and asked when [he] would be seen by the outside eye [doctor]." (*Id.*) Letizio said that "he would get back with [Provitt,] but he never did." (*Id.* (internal quotation marks omitted).) Provitt filed grievance # 1103072 on August 13, 2024, "alleging denial and delay of medical attention because [he] never had the follow up appointment" with the ophthalmologist at Einstein Jefferson Philadelphia. (*Id.*) He received an initial response to grievance # 1103072 on September 18, 2024, stating that a review of his medical records did not reveal any scheduled appointments for outside or on-site treatment for the month of August 2024. (*Id.*)

Provitt states that he went to a sick call visit on September 27, 2024, with Defendant Dr. Greer, where he "complained about seeing black dots[,] blurred vision[,] and pain in the orbital bone area." (*Id.* at 22-23.) Greer told Provitt that she would consult with Letizio and "get back to [him] with a treatment plan," but that neither Greer nor Letizio ever did so. (*Id.* at 23.) He appealed grievance # 1103072 to Superintendent Terra, who responded on October 21, 2024, that "when [Provitt] was at the outside hospital for [his] eye [injury,] discharge paperwork was printed . . . indicat[ing] an appointment but it was for another medical issue." (*Id.* at 22.)

Meanwhile, Provitt filed a second grievance #1113830 on October 18, 2024, "alleging continued denial and delay of medical treatment for [his] eye injury suffered August 1, 2024." (*Id.*) That grievance was upheld in part on November 15, 2024, "due to delay in ophthalmology exam," but Provitt's prayer for monetary relief was denied. (*Id.* at 23.) Provitt asserts that he

"appealed to final review" and on July 24, 2025, the Chief Grievance Officer responded that the Bureau of Health Care Services and concurred with the initial review, though he does not specifically indicate which grievance number this appeal concerned. (*Id.* at 22.) Provitt states that on June 26, 2025, when he was housed at SCI Forest, he "was allowed to review [his] medical records[, which] reflect[ed] that [he] was indeed supposed to have an appointment scheduled with the attending [doctor] at Einstein Jefferson Philadelphia." (*Id.*)

Provitt asserts claims for excessive force and failure to intervene against the DOC Defendants involved in the August 1, 2024 incident. (*Id.* at 24.) He asserts that Sgts. Terra and McCusker violated his due process rights "when they falsified misconducts."[3] (*Id.*) He alleges that Defendants Letizio, Greer, Wood, Caligiuri, and Savage were deliberately indifferent to his medical needs for "failing to make sure that [Provitt] was scheduled for a[] medical appointment" the week after his outside treatment, "ignoring the recommendation of the eye specialist," and "fail[ing] to make the recommended appointment or come up with a treatment plan for [his] serious medical needs." (*Id.* at 23-24.) He seeks damages and injunctive relief. (*Id.* at 25.)

Defendants Letizio, Wood, and Greer ("Wellpath Defendants") filed a Motion to Dismiss Provitt's Complaint for failure to state a claim, arguing that Provitt does not allege sufficient factual content to support his claims against them and that he failed to exhaust his administrative remedies as to Defendant Wood. (*See generally* ECF No. 26.) Following Counsel's assistance in the identification of certain Defendants originally identified as John or Jane Doe or otherwise incorrectly named in the Complaint, (*see* ECF Nos. 17, 24, 25), Defendants Sgt. McCusker, Lt. Terra, Lt. Potoski, Unit Manager Murphy, C.O. Hill, C.O. Harris, R.N. Supervisor Caligiuri, C.O.

[3] Provitt's Complaint also asserted that Hearing Examiner Yodis violated his due process rights when conducting his misconduct hearing. (*See* Compl. at 24.) In an earlier Order, the Court dismissed that claim and terminated Yodis as a Defendant. (*See* ECF No. 6 at 3-4 n.2.)

Gajewski, C.O. Jenkins, and C.O. Campbell ("DOC Defendants") filed a Motion to Partially Dismiss Provitt's Complaint, arguing that Provitt's claims against them in their official capacities should be dismissed as a matter of law, (*see generally* ECF No. 35). Provitt has responded to both Motions, (*see* ECF Nos. 37, 39), and the Wellpath Defendants have filed a Reply to Provitt's response, (*see* ECF No. 38).

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally).

## III. DISCUSSION

Provitt asserts claims for violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (internal quotation marks and citation omitted). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)).

### A. DOC Defendants

The DOC Defendants seek dismissal of Provitt's claims against them in their official capacities, arguing that the claims are barred by the Eleventh Amendment, and that they are not "persons" within the meaning of § 1983 when acting in their official capacities. (*See generally* ECF No. 35 at 5–9.) The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government

agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Provitt concedes that his official capacity claims against the DOC Defendants are barred by Eleventh Amendment immunity. (*See* ECF No. 39 at 1.) Accordingly, those claims will be dismissed.

However, state officials sued in their individual capacities are "persons" within the meaning of Section 1983. *See Hafer*, 502 U.S. at 31. Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities. *Id.* The Eleventh Amendment also does not generally bar prospective declaratory or injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (*per curiam*).

The DOC Defendants do not move for dismissal of any claims seeking money damages against them in their individual capacities. (*See generally* ECF No. 35.) However, they argue that,

to the extent Provitt seeks injunctive relief, any such request is mooted by his transfer out of SCI Phoenix to another facility, and to the extent he seeks declaratory relief for past conduct, such relief is unavailable. (*See* ECF No. 35 at 6-7.) The Court agrees. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (citing *Abdul-Akbar v. Watson,* 4 F.3d 195, 197 (3d Cir. 1993))); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another.").

Accordingly, the Court will grant the DOC Defendants' Motion and dismiss Provitt's claims against the DOC Defendants in their official capacities and any claims against the DOC Defendants for injunctive or declaratory relief. The DOC Defendants will be directed to answer the Complaint as to any claims against them in their individual capacities.

### B. Wellpath Defendants

#### 1. Administrator Wood

Defendant Wood argues that Provitt has not pleaded her personal involvement in his medical treatment and that in any event, as an administrator who is not a medical provider, she was entitled to rely on the treatment provided by those who are. (*See* ECF No. 26 at 16-17.) Provitt responds that through the grievance process he learned who Wood was, that "her job as Wellpath[']s Administrator was to set up appointments," and that "Wood is part of the [decision] process and she failed to make sure [Provitt]'s follow up treatment [appointment] was made." (ECF No. 37 at 3, 7.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v.*

*Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N. J. Dept. of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015) (citations omitted). Participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

Provitt's Complaint contains only conclusory allegations that Wood was involved in delaying his treatment. Rather than plead any specific facts about Wood's involvement in his claims, Provitt instead relies on her job title and supposed duties that he learned of during the grievance process. Moreover, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Provitt does not allege that he had any direct interactions with Wood or other facts to suggest that Wood was personally involved in the delay or denial of his medical treatment. Accordingly, he has not stated a claim to relief as to Defendant Wood, and the Wellpath Defendants' Motion will be granted in this respect.[4]

**2. Defendants Letizio and Greer**

Provitt asserts that Defendants Letizio and Greer were deliberately indifferent to his serious medical needs. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)). Deliberate indifference is properly alleged "where

---

[4] In light of this disposition, the Court does not reach the issue of whether Provitt exhausted his administrative remedies as to Defendant Wood. (*See* ECF No. 26 at 18-20.)

(1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted). This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

"Not every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 228 (cleaned up). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).

Provitt alleges that he spoke to Dr. Letizio on August 12, 2024, less than two weeks after his injury, to ask about his follow-up treatment with the outside practitioner, and that Letizio never arranged that treatment. (*See* Compl. at 22.) He alleges that he saw Dr. Greer on September 27 and reported "seeing black dots," having "blurred vision," and experiencing "pain in the orbital bone area," and that neither Greer nor Letizio developed a treatment plan for his injuries. (*Id.* at 22-23.)

Greer and Letizio argue that Provitt's medical records contain information about treatment he received in October and November 2024, and that an external consultation with an eye hospital was scheduled but then cancelled as a result of Provitt's transfer from SCI Phoenix to SCI Forest. (*See* ECF No. 26 at 12-13 (discussing "[w]hat Provitt did not tell this Court" about his medical treatment).) Letizio and Wood argue that Provitt's factual allegations amount to nothing more than a disagreement over his treatment. (*See id.* at 13-15.) However, a factual dispute over the extent of the treatment that Provitt received, relying on "progress notes" and Provitt's medical records outside the scope of the Provitt's pleading, (*id.* at 13), is not a valid basis for a motion to dismiss, *cf. Rivera v. New Castle Cnty. Police Dep't*, 152 F.4th 147, 153 (3d Cir. 2025) ("When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022))). Moreover, Provitt's allegation is not a disagreement over the treatment that Letizio and Greer provided; his allegation is that these two Defendants never developed a plan to treat his specific injuries and symptoms and prevented him from being seen by an outside provider who had recommended a follow-up visit and could have provided that treatment. *See Montanez*, 154 F.4th at 141 (stating that deliberate indifference includes "prevent[ing] an inmate from receiving recommended treatment"); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d

Cir. 1987) ("Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates," or "when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." (cleaned up)).

Whether Provitt's allegations can be supported by evidence is not the issue before the Court. For current purposes, the Court is only concerned with the well-pleaded and plausible allegations of the Complaint, which state a claim to relief against Defendants Letizio and Greer for deliberate indifference to Provitt's serious medical needs. Accordingly, Defendants Letizio and Greer have not carried their burden, and the Wellpath Defendants' Motion to Dismiss is denied in this respect.

## CONCLUSION

For the foregoing reasons, the DOC Defendants' Motion to Partially Dismiss the Complaint will be granted, and the Wellpath Defendants' Motion to Dismiss will be granted in part and denied in part. All remaining Defendants shall file responsive pleadings within the time allotted by the Federal Rules of Civil Procedure.

**BY THE COURT:**

*/s/ John Milton Younge*

**JOHN MILTON YOUNGE, J.**